FOOD HANDLERS LOCAL 425, AMAL-
GAMATED MEAT CUTTERS AND
BUTCHER WORKMEN OF NORTH
AMERICA, AFL–CIO, Plaintiff,

v.

PLUSS POULTRY, Inc., Defendant.

Civ. A. No. 363.

United States District Court
W. D. Arkansas,
Fayetteville Division.

Feb. 7, 1958.

---

22. See Bailey v. Glover, 21 Wall. 342, 88 U.S. 342, 22 L.Ed. 636.

Anthony J. Sabella, Memphis, Tenn., Lem C. Bryan, Fort Smith, Ark., for plaintiff.

Kothe & Hall, Tulsa, Okl., Russell Elrod, Siloam Springs, Ark., for defendant.

JOHN E. MILLER, District Judge.

Both parties have moved for summary judgment, and the motions are now before the Court for decision upon the pleadings, exhibits, affidavits, and briefs of the parties. The question to be decided is whether there is a genuine issue as to any material fact and whether either party is entitled to a summary judgment in its favor as a matter of law. Rule 56(c), Fed.Rules Civ.Proc. 28 U.S.C.A.

In its complaint plaintiff alleges:

That it is a labor organization and trade union having its principal place of business in Fayetteville, Arkansas; that the defendant is an Arkansas corporation having its principal place of business in Siloam Springs, Arkansas; and that defendant is engaged in the processing of poultry in an industry affecting commerce within the meaning of Title 29 U.S.C.A. § 185.

That on or about February 2, 1956, it entered into an agreement with the defendant covering, among other things, dues deduction, job posting, and other working conditions for defendant's employees at its Siloam Springs, Arkansas, plant. The agreement was to be in effect from February 2, 1956, until December 7, 1956. On or about April 12, 1957, plaintiff and defendant entered into a new agreement which was made effective retroactively to February 4, 1957, and which would terminate April 1, 1958. A copy of the new and existing agreement is attached as Exhibit A to the complaint.

That each of the agreements provided for arbitration of any dispute between the parties with reference to the "proper interpretation or application of any provision of this agreement". The specific arbitration provision contained in the existing agreement reads as follows:

"Arbitration

"Section C—In the event of any dispute arising between the Company and the Union with reference to the proper interpretation or application of any provisions of this Agreement, and such dispute cannot be resolved by the grievance procedure set forth in Section (B) of this Article IV, it may, at the request of either party, be submitted to a Board of Arbitrators, consisting of one member to be appointed by each of the parties hereto, and a third member to be chosen by the first two

members. The party requesting arbitration shall give notice in writing of the fact to the other party, and in such notice shall furnish the name of its arbitrator and the opposing party shall, within twenty-four (24) ——, appoint its arbitrator and give notice thereof in writing to the other party. In the event such two arbitrators cannot agree upon the third arbitrator within seventy-two (72) hours after the original request for arbitration, both parties agree to request the Federal Mediation and Conciliation Service to submit a list of five (5) names of arbitrators. The party originally requesting arbitration shall make the request for said list. The Company and the Union shall alternately strike off names from the list until one name remains. The remaining arbitrator on the list shall be appointed the third member of the Board of Arbitration. Such Board of Arbitration shall have authority only to interpret and apply the provisions of this contract. Its award shall be in writing, shall be rendered within five (5) days after the appointment of the last member thereof, and shall be binding upon the Company, the Union and the employees involved in the controversy. The parties hereto shall divide the expense of the third arbitrator."

That a dispute arose between it and the defendant over the interpretation and application of the dues deduction and job posting provisions of the agreement; that plaintiff requested defendant to comply with the agreement, which defendant refused to do; and that plaintiff duly demanded that the dispute be submitted to arbitration in accordance with the agreement, but that defendant refused to do so.

That in accordance with the agreement it requested the Director of the Federal Mediation and Conciliation Service to furnish a list of five arbitrators to hear the dispute, and that such list was furnished; that plaintiff requested defendant to meet for the purpose of selecting an arbitrator, but that the defendant refused to do so.

That on September 30, 1957, the arbitrator, duly selected according to the terms of the agreement, after a proper hearing duly issued his award, which was concurred in by the Union member of the Board of Arbitration. A copy of the award is attached as Exhibit B to the complaint, and said award was in favor of the plaintiff on both issues, i. e., job posting and dues deduction.

That defendant has refused to abide by the award of the Board of Arbitration; that defendant should be enjoined and restrained from violating the agreement and award by refusing to abide by the decision of the Board of Arbitration. Plaintiff prays for such an injunction; for an order confirming the award of the Board of Arbitration; for its costs, disbursements, and expenses in this action; and for such other and further relief as justice and equity may require.

In due time the defendant filed its answer and included therein a motion to dismiss. The motion to dismiss challenges the Court's jurisdiction over the subject matter and asserts that the complaint does not state facts sufficient to constitute a cause of action.

In its answer defendant admits most of the factual allegations made in plaintiff's complaint. However, it denies that the matters on which plaintiff demanded arbitration are proper subjects of arbitration under the agreement, and alleges that plaintiff did not comply with the arbitration provision of the agreement in initiating and prosecuting the arbitration and that the purported award is contrary to law and without legal foundation. Specifically, defendant alleges that the Board of Arbitration was not selected in the manner provided in the agreement.

The defendant further alleges that the purported award of the arbitrator would require the defendant to violate the federal law and would subject defendant to civil action by its employees for the amount of union dues checked off pur-

suant to the purported award, and in the alternative that the decision of the arbitrator is at such variance with established principles of law and is so outrageous and shocking to reason and conscience that it should be set aside by the Court.

On January 6, 1958, the defendant filed its motion for summary judgment in accordance with the provisions of Rule 56 (b) and (c), F.R.C.P., on the ground that the pleading and affidavit attached thereto show that the defendant is entitled to a judgment as a matter of law.

Attached to the motion is an affidavit of M. H. Simmons, Manager of defendant, who states, under oath, that he has personal knowledge of the facts set out in the affidavit; that in the event any matter is submitted to arbitration the Board of Arbitration shall consist of one member appointed by each of the parties, and a third member to be chosen by the first two members, and if the two members cannot agree, then both parties are to request the Federal Mediation and Conciliation Service to submit a list of five names from which the third member of the Board of Arbitration should be chosen; that he has not, nor has any other officer or employee of the defendant, appointed an arbitrator to serve on the Board of Arbitration to arbitrate the matter of the check-off of union dues or the posting of job vacancies; nor has he, or any employee of defendant, requested the Federal Mediation and Conciliation Service to submit a list of five names from which to select the third arbitrator; nor has he, or any other employee of the defendant participated in any manner in the selection of Ralph C. Barnhart of Fayetteville, Arkansas, or any other person to arbitrate the matter; nor has he, or any other employee, officer or agent of defendant, participated or acquiesced in the arbitration by the said Ralph C. Barnhart or any other person of the check-off of union dues or the posting of job vacancies, and that he, as General Manager of defendant, has continued to object to any purported authority of Ralph C. Barnhart, or any other person, to arbitrate the matter of check-off of union dues and the posting of job vacancies under the collective bargaining agreement.

On January 13, 1958, plaintiff filed its motion for summary judgment in accordance with the provisions of Rule 56(b) and (c), F.R.C.P., and attached thereto an affidavit of its President, Robert J. Parker. In the affidavit Parker states:

"My organization, plaintiff herein, is signatory to a collective bargaining agreement presently subsisting, which by its terms became effective February 4, 1957, and expires April 1, 1958. The wage increase contained therein, however, became effective on and after March 4, 1957. Prior to this agreement we were signatory to an agreement which terminated on December 7, 1956, pursuant to a letter from us terminating the same, as provided for in the Agreement. Pursuant to the terms of that Agreement, plaintiff had submitted to defendant 'check-off' authorization cards signed by defendant's employees, authorizing defendant to 'check-off' dues and transmit the same to the plaintiff. The form of the authorizations are in the same form as written in the Arbitration Award attached to the Complaint in this cause.

"Defendant did 'check-off' dues and transmit the same to plaintiff for the duration of the Agreement.

"However, defendant failed to 'check-off' dues and transmit the same to plaintiff under the terms of the new Agreement. Furthermore, defendant also failed to post a job vacancy. Plaintiff sought to adjust these matters as grievances under the Agreement by following the procedure contained therein, but was unsuccessful. On April 29, 1957, by certified mail, plaintiff gave notice of its desires to arbitrate the grievances and appointed affiant as their arbitrator. On May 3, 1957, defend-

ant, by its attorney, notified plaintiff by registered mail that they declined to arbitrate the grievances. On May 6, 1957, plaintiff, by certified mail, urged the defendant to reconsider its position and again defendant, by its attorney, declined to do so. On May 17, 1957, plaintiff, by certified mail, notified defendant that they would follow the agreement and request a panel of arbitrators from the Federal Mediation and Conciliation Service. Plaintiff did request a panel and on May 31, 1957, defendant objected, by telegram, to the Federal Mediation and Conciliation Service submitting a panel of arbitrators. On June 3, 1957, the Federal Mediation and Conciliation Service, by its General Counsel, informed defendant that it would comply with plaintiff's request as it interpreted the Agreement to permit it. On June 6, 1957, plaintiff informed defendant's manager that it had received the panel and requested him to strike the names, as provided for in the Agreement, but defendant's manager declined to do so and directed affiant to defendant's attorney. On June 7, 1957, plaintiff notified, by certified mail, defendant's attorney of this fact and requested a time and place to meet for the purpose of striking the names from the panel. This, defendant's attorney declined to do. Plaintiff performed all its obligations under the Agreement, but still defendant declined to fulfill its obligations. The arbitration was held and on September 30, 1957, the Award was issued. On October 3, 1957, affiant, as a member of the panel, concurred in the Award and so notified defendant. On October 17, 1957, plaintiff requested defendant to comply with the Arbitration Award, but defendant refused to do so."

With reference to the matters of job posting and check-off or dues deduction, the new agreement contains the following provisions:

"Article VI
"Seniority

"Section A.—The principles of seniority on a male and female basis separately, for all employees below the grade of supervisor, shall prevail on a plant basis in regard to laying off and rehiring, transfer and promotion, depending upon the ability of the individual to satisfactorily perform the work.

"It is understood, however, that the parties have agreed in principle reference to the transfer and promotion, according to seniority providing the efficiency of all operations is not seriously *detoriated* at the time such needs occur. When a permanent vacancy occurs, the supervisor will notify the steward in that department so that the steward can post the job. The senior qualified employee who is the successful bidder on a job vacancy will be transferred to the new position within in a reasonable length of time following the filing of a written bid; and, so far as practicable, ten (10) working days shall be deemed a reasonable length of time."

\*       \*       \*       \*       \*       \*

"Article XI
"Check-off

"The Company agrees to check-off the Union dues and Initiation fee, for all employees for whom they have check-off authorizations. Such authorizations shall be irrevocable for the period of this Contract or one year whichever is shorter.

"All money checked off shall be paid promptly to the financial secretary of the Local Union. The Union shall furnish the Company a letter stating the amount of monthly dues and the name of its financial secretary."

The parties agree that there is no genuine issue as to any material fact, and the question that must be decided by the Court is whether Ralph C. Barnhart had jurisdiction to make the award.

The Court has jurisdiction of this cause under Section 301, Labor Management Relations Act, 29 U.S.C.A § 185(a). See also, Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, 77 S.C. 923; Local 205, United Electrical Radio and Machine Workers of America (UE) v. General Electric Company, 1 Cir., 233 F.2d 85.

It should be borne in mind that plaintiff is seeking a judgment against the defendant as follows:

"1. That defendant, its officers, servants, agents and attorneys and all persons acting in aid of or in conjunction with them, or any of them, be enjoined and restrained from violating the agreement and award by refusing to abide by the decision of the Board of Arbitration directing the deduction of dues and the posting of the job vacancy.

"2. That this Court issue an order confirming the award of the Board of Arbitration directing the dues deduction and the posting of the job vacancy.

"3. That plaintiff be awarded its costs, disbursements and expenses in this action.

"4. That the Court grant such other and further relief as justice and equity may require."

The award sought to be enforced was made by Ralph C. Barnhart, Arbitrator, on September 30, 1957, and was concurred in on October 3, 1957, by Robert J. Parker, President of plaintiff, who had been selected by plaintiff as one of the arbitrators.

The defendant at page 8 of its reply brief to plaintiff's brief in opposition to defendant's motion, states:

"Defendant contends principally that the subjects of the award were not properly reviewable by the Arbitrator in the instant case because of a genuinely good faith doubt of the jurisdiction of the Arbitrator under the circumstances peculiar to the merits involved.

"Defendant preferred to exercise its right of submission of this cause to a Federal Court rather than an Arbitrator by repudiating and resisting the arbitration provisions, thus requiring plaintiff to invoke the only remedy countenanced by the United States Supreme Court, that of specific performance."

On page 3 of the same brief defendant states:

"We agree it is no longer a question for dispute that this Court has the immediate power to specifically compel arbitration under Section 301 of the Act. Plaintiff here, however, did not choose to exercise this remedy to obviate any question concerning the jurisdictional authority of the Arbitrator."

Beginning near the middle of page 4 and extending to page 5 of plaintiff's main brief in opposition to defendant's motion, the plaintiff contends that the specific remedy sought is expressly provided for in Section 4 of the Arbitration Act, 9 U.S.C. § 4, and it is not required to proceed under § 301 of the Labor Management Relations Act, 29 U.S.C.A. Section 185(a); that to hold otherwise would mean that a party to a contract to arbitrate could halt the proceedings at any time and force the plaintiff at every stage before the award to proceed for an order of specific performance.

On page 3 of plaintiff's reply brief, it states:

"Plaintiff readily concedes, as was done in his main brief, that the Supreme Court did not speak out, in the series of cases permitting specific performance of an agreement to arbitrate, on the applicability of the Federal Arbitration Act, for the reason that the issue was not before it. Plaintiff contends that a fair and reasonable reading of these cases, supports his contention that the Supreme Court sub silentio permits the applicability of the Arbitration Act."

In support of its contention that the award of the Arbitrator is valid, the

plaintiff relies upon the cases of Kanmak Mills, Inc., v. Society Brand Hat Company, 8 Cir., 236 F.2d 240, and Kentucky River Mills v. Jackson, 6 Cir., 206 F.2d 111, 47 A.L.R.2d 1331, and on page 6 of its reply brief, states:

"The significance of Kanmak and Kentucky River Mills is, first, that where the arbitration agreement so provides, courts will enforce an award despite the refusal of one of the parties to cooperate and participate, and, secondly, in such instance, the aggrieved party need not, under Section 4 of the Arbitration Act, resort to the courts to compel arbitration since the language indicates such resort is permissive rather than mandatory."

In the Kentucky River Mills case, supra [206 F.2d 117], the provision for arbitration provided:

"If either party fails to appoint an arbitrator within seven days after receiving the other party's nomination of an arbitrator, the one arbitrator nominated might act as sole arbitrator." Page 116 of 206 F.2d.

In the Kanmak Mills case, supra [236 F.2d 242], the contract provided that all controversies or claims arising thereunder should be referred to arbitration in the following manner:

"a. When the controversy or claim related to the condition or quality of any merchandise delivered or to be delivered under the terms hereof, such controversy shall be referred to the Mutual Adjustment Bureau of the Cloth and Garment Trades by the buyer, or upon his failure to refer such controversy or claim to said Mutual Adjustment Bureau of the Cloth and Garment Trades the seller may make such reference.

\* \* \* \* \* \*

" 'b. All other controversies arising out of or relating to this contract, or breach thereof, shall be settled by arbitration in accordance with the Rules, then obtaining, of the American Arbitration Association and judgment upon the award rendered may be entered in the highest court of the forum, state or federal, having jurisdiction.' " Page 242 of 236 F.2d.

Disputes arose between the parties concerning seven contracts, and ultimately the parties agreed to submit all these disputes to the American Arbitration Association. At page 251 of 236 F.2d the court said:

"Here both parties not only agreed to arbitrate, but formulated the issues between them, chose the arbitrators, presented themselves with evidence before the duly constituted tribunal, and were proceeding."

In view of the express agreement of the parties the court concluded that Kanmak could not withdraw certain issues from the arbitration proceeding and was bound by the arbitration award.

Neither the Kanmak case nor the Kentucky River Mills case supports the contentions of the plaintiff in the instant action. The Court has heretofore set out the provisions of the Arbitration Agreement here involved, and a reading of that Agreement discloses no provision which would permit one party to initiate and prosecute to a conclusion an arbitration proceeding without any participation by the other party.

■ There is also a question as to whether the arbitration provision in the contract in question is broad enough to permit the arbitrator or arbitrators to determine the question of arbitrability of the issues sought to be arbitrated.

In this connection in Local 205, United Electrical Radio and Machine Workers of America (UE) v. General Electric Company, supra, the Court, at page 101 of 233 F.2d, said:

"We have not passed upon the question of the arbitrability of the two grievances at issue here, although counsel for defendant informed us that the Company denies that they are arbitrable under the contract. Arbitrability is the ques-

tion which the district court must pass on in the first instance. By way of guidance, it may be appropriate to note here a brief comment on some general principles. The scope of an arbitration pledge is solely for the parties to set, and thus the determination of whether a particular dispute is arbitrable is a problem of a contract interpretation. See, e. g., International Union United Furniture Workers, etc., v. Colonial Hardwood Flooring Co., Inc., 4 Cir., 1948, 168 F.2d 33; Markel Electric Products, Inc., v. United Electrical Workers, supra [2 Cir., 202 F.2d 435] (majority and dissenting opinions). However, an arbitration clause, either expressly or by broadly stating its scope to include disputed interpretations of any contract term, may refer the very question of arbitrability to the arbitrator for decision. That is, just as a court has jurisdiction to determine its own jurisdiction, the arbitrator in such a case has power to interpret the scope of the arbitration terms of the contract, including questions of whether the dispute at issue is made arbitrable therein and whether the applicant has satisfied the contract procedures prerequisite to arbitration. See, e. g., Wilson Bros. v. Textile Workers Union, supra [D.C.], 132 F.Supp. [163] at pages 164–165; Insurance Agents' Intern. Union, A. F. of L. v. Prudential Ins. Co., D.C.E.D.Pa. 1954, 122 F.Supp. 869, 872. Thus the district court must first determine whether the contract in suit puts matters of arbitrability to the arbitrator or leaves them for decision by the court. If it is the latter, the court must decide such points before it can give relief under §§ 3 or 4 of the Arbitration Act. If it is the former, and the applicant's claim of arbitrability is not frivolous or patently baseless, an order can be given, with the decision on arbitrability to be made in the arbitration proceedings that follow,

subject of course to §§ 10–11 of the Act. See, e. g., Local 379 of Intern. Union, etc., v. Jacobs Mfg. Co., D.C.D.Conn.1953, 120 F.Supp. 228. See also Goodall-Sanford, Inc., v. United Textile Workers, 1 Cir., 233 F.2d 104."

A consideration of the arbitration provision in the case at bar convinces the Court that it is not broad enough to give the arbitrator or arbitrators full authority to determine the issue of arbitrability of the matters sought to be arbitrated.

■ The Court is of the opinion that the plaintiff should have followed the procedure outlined by the Supreme Court of the United States in Textile Workers Union of America v. Lincoln Mills of Alabama, supra. The provision in the contract for arbitration contains no provision for an ex parte arbitration, and, upon the refusal of the defendant to enter into the arbitration, the remedy of the plaintiff was that provided in Section 301 of the Labor Management Relations Act as construed in the Lincoln Mills case, supra.

The question whether the plaintiff was entitled to have the issues arbitrated could not be determined by the plaintiff alone. Absent a provision in the contract referring the very question of arbitrability to the arbitrator and absent a provision allowing an ex parte arbitration, arbitrability of the issues must be determined by the usual processes of the law and in this case that requires the plaintiff to submit the arbitrability of the questions to a court by a suit for specific performance. In determining whether specific performance should be required, the Court would necessarily have to determine whether the issues were arbitrable under the terms of the contract. The procedure followed by plaintiff in the instant case in obtaining the arbitration is not in accord with the provisions of the arbitration agreement, and the award made by the arbitrator is invalid.

Therefore, the motion of plaintiff for summary judgment should be denied, and

the motion of defendant for summary judgment should be granted.

The remaining question is whether the Court should dismiss finally plaintiff's complaint, or should allow plaintiff time in which to amend its complaint, if it so desires, to seek specific performance of the contract.

In paragraph 9 of the complaint the plaintiff alleges:

"Plaintiff has made repeated demands upon the defendant to comply with the agreement respecting dues deduction and job posting. This, defendant has refused to do."

In paragraph 7 of its answer the defendant alleges:

"Defendant admits the allegations contained in paragraph 9 to the extent that such averments referred to demands by certain of plaintiff's claimed representatives who inquired concerning dues deduction authorization cards which expired by their own terms under the 1956 agreement, and defendant admits that plaintiff made demands upon defendant seeking to arrange for a collusive agreement concerning membership of the employees in the union to which defendant did not accede because it was violative of the Arkansas law prohibiting such. Defendant admits that certain of plaintiff's representatives discussed the subject of job posting, but denies that it had any relationship to the subject of dues deduction. Defendant further admits that it refused to make any dues deduction without proper authorization cards signed by the employees as required by law, but denies that it refused to do so contrary to the agreement or understanding reached with certain of the international representatives of the plaintiff. * * *."

In view of the issues involved, and since the plaintiff in the prayer of its complaint prays that the Court "grant such other and further relief as justice and equity may require," the judgment of the Court dismissing the motion for summary judgment of plaintiff and granting the motion of defendant for summary judgment should provide that the plaintiff, if it so desires, may file and serve on or before February 24, 1958, an amendment to its complaint, and seek specific performance of the provisions of the contract providing for arbitration.

An order in accordance herewith is being entered today.