FOOD HANDLERS LOCAL 425, AMAL-
GAMATED MEAT CUTTERS AND
BUTCHER WORKMEN OF NORTH
AMERICA, AFL–CIO, Appellant,

v.

PLUSS POULTRY, INCORPORATED,
Appellee.

No. 15995.

United States Court of Appeals
Eighth Circuit.

Nov. 6, 1958.

---

Anthony J. Sabella, Memphis, Tenn., for appellant.

Carl D. Hall, Jr., Tulsa, Okl. (C. A. Kothe and Kothe & Hall, Tulsa, Okl., were on the brief), for appellee.

Before SANBORN, WOODROUGH and VOGEL, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is taken by the labor union to reverse a summary judgment by which the District Court dismissed the union's action to obtain confirmation and enforcement of an arbitration award. The award was rendered by one Ralph C. Barnhart as arbitrator and agreed to by the president of the union, as union appointed arbitrator, in favor of the union and against the defendant in this action, Pluss Poultry, Inc. The summary judgment was accompanied by the opinion of the District Court which set forth the proceedings and judgment clearly and fully and is reported at 158 F.Supp. 650.

Federal jurisdiction was invoked under the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185(a) and the United States Arbitration Act, 9 U.S.C.A. § 1 et seq. The parties agreed that there was no genuine issue as to any material fact. The question presented for the court to decide, on motions for summary judgment by both parties, was whether Ralph C. Barnhart had jurisdiction to make the arbitration award sought to be enforced in the action.

■ There was a collective bargaining agreement between the parties which included stipulations for submission to a Board of Arbitrators of any disputes with reference to the proper interpretation or application of any provisions of the agreement that could not be settled in accordance with prescribed grievance procedure. The arbitration stipulations included the following:

"Section C. In the event of any dispute arising between the Company and the Union with reference to the proper interpretation or application of any provisions of this Agreement, and such dispute cannot be resolved by the grievance procedure set forth in Section (B) of this Article IV, it may, at the request of either party, be submitted to a Board of Arbitrators, consisting of one member to be appointed by each of the parties hereto, and a third member to be chosen by the first two members. The party requesting arbitration shall give notice in writing of the fact to the other party, and in such notice shall furnish the name of its arbitrator and the opposing party shall, within twenty-four (24) .., appoint its arbitrator and give notice thereof in writing to the other party. In the event such two arbitrators cannot agree upon the third arbitrator within seventy-two (72) hours after the original request for arbitration, both parties agree to request the Federal Mediation and Conciliation Service to submit a list of five (5) names of arbitrators. The party originally requesting arbitration shall make the request for said list. The Company and the Union shall alternately strike off names from the list until one name remains. The remaining arbitrator on the list shall be appointed the third member of the Board of Arbitration. Such Board of Arbitration shall have authority only to interpret and apply the provisions of this contract. Its award shall be in writing, shall be rendered within five (5) days after the appointment of the last member thereof, and shall be binding upon the Company, the Union and the employees involved in the controversy. The parties hereto shall divide the expense of the third arbitrator."

Disputes arose in respect to "check off" (or dues deduction) and to "job posting" and arbitration of the two disputes was requested by the union and refused by the company. The company claimed that the disputes were not arbitrable and refused to cooperate for arbitration. The union selected its president as an arbitrator and the company refused to make an appointment. The union called upon the Federal Mediation and Conciliation Service to submit a list of names of arbitrators to choose from and it complied but the company refused to choose. Thereupon the Service appointed Mr. Barnhart, referred to above, to arbitrate the disputes and he called a hearing which was attended by the union but not the company. He considered evidence concerning the matters in dispute and made the award, as he stated, " * * * without consultation with the Union member" (who afterwards agreed to it). He declared in his award as to the "check off" dispute that " * * * it is the award of the arbitrator that the Company is obligated to check-off union dues and initiation fees for all employees who had signed authorization cards under the 1956 Agreement"; and as to the "job posting" dispute he stated: "The award is * * * that the grievance is allowed and that the job should be posted * * *".

It is not contended that Mr. Barnhart acted fraudulently and his award covering some seventeen pages indicates on its face that the matters involved were complex and pains were taken in preparing it. But the court observed that the collective bargaining agreement between the parties in this case " * * * discloses no provision which would permit one party to initiate and prosecute to a conclusion an arbitration proceeding without any participation by the other party".

The court considered the cases of Kanmak Mills, Inc., v. Society Brand Hat Company, 8 Cir., 236 F.2d 240, and Kentucky River Mills v. Jackson, 6 Cir., 206 F.2d 111, 47 A.L.R.2d 1331, relied on by the union, and held that they afforded no support for the award sued on. There was no basis to conclude that the company ever consented to any arbitration of disputes where it took no part in the selection of any arbitrator or where the Federal Mediation and Conciliation Service was empowered or undertook to select the arbitrator. The District Court found no authority to support the ex parte award made by Mr. Barnhart in any precedents or in the statutes and we find none. The award was therefore void and unenforceable and the judgment of dismissal of the action must be affirmed.

It also appeared to the trial court that the arbitration provisions of the collective bargaining agreement were " * * * not broad enough to give the arbitrator or arbitrators full authority to determine the issue of arbitrability of the matters sought to be arbitrated," and that " * * * the plaintiff should have followed the procedure outlined by the Supreme Court of the United States in Textile Workers Union of America v. Lincoln Mills of Alabama [353 U.S. 448, 77 S.Ct. 912, 923, 1 L.Ed.2d 972]" where plaintiff, in an action to compel performance of an agreement to arbitrate, petitioned for an order of compulsion under Section 4 of the United States Arbitration Act and the order was granted. [158 F.Supp. 657.]

But we do not rest our affirmance of the judgment upon the conclusion of the trial court that the provisions of the agreement were not sufficiently broad.

The award includes a clear definition of the two issues sought to be arbitrated. We have referred to them as the dispute over "check off" and the dispute over "job posting".

*As to check off.* The original collective bargaining agreement between the parties here was dated February 2, 1956, to be in effect until December 7, 1956, and to continue in effect for an additional year if not re-opened or terminated on sixty days notice prior to December 7, 1956. Negotiations on a new contract were carried on from December 7, 1956

and apparent agreement was reached on February 1, 1957, and ratified on that day by vote of the union. But the company did not sign until a change was made in the language pertaining to holiday pay on April 12, 1957. The change was re-ratified by the union and the agreement was mutually signed that night. During the negotiations from December 7, 1956, to April 12, 1957, no discussion was had on the subject of check off. On April 24, 1957, the union requested the company to check off union dues in compliance with the agreement. But the company answered that it had thrown away the authorizations for such check offs signed by the employees and that new ones would have to be submitted before check off would be made. Such new ones were submitted by some ninety employees, but could not be procured from six employees who had signed them under the 1956 Agreement or prior to April 12, 1957. The lost authorization cards provided that they should " * * * remain in effect for the period of time covered by this contract or one year, whichever is less * * * " and "shall automatically be effective for successive years unless revoked by me in writing to both the Company and the Union, at least 30 days prior to the expiration date of the Contract between the Company and the Union".

The union requested the company to check off union dues of the six employees and the question for decision on the grievance was "Did the authorization cards signed during the period of the agreement of February 2, 1956, expire on December 7, 1956 so that check off thereunder by the company after that date would have been illegal as the company contends, or did the authorization cards continue in effect so as to require the company to check off dues thereunder following the negotiations and signing the Agreement of April 12, 1957?"

*As to job posting.* It appeared that on or about April 1, 1957, a regular employee left the employment of the company. The steward was not notified and the union was unaware that the employee had terminated until about April 24, 1957. On that date the union requested that the job be posted in accordance with the agreement. The company refused on the ground that on April 1 there was no agreement in existence. The job was filled by direct appointment without regard to seniority and grievance was filed by the union. The agreement when signed contained the provision: "This agreement shall be considered the sole agreement and shall be in full force and effect from February 4, 1957, to April 1, 1958, except for increase in basic wages which become effective on and after March 4, 1957." The question submitted therefore was: "Should the job vacancy have been posted under the terms of the agreement of April 12, 1957?"

■■■ In our view the two disputes on which the union requested arbitration were the kind of disputes that properly chosen arbitrators would have had jurisdiction to arbitrate. Mere assertion of non-arbitrability by one of the parties would not make it necessary for the other to petition for a court order to proceed, provided for in Section 4 of the United States Arbitration Act. Questions as to the arbitrability of such disputes are initially for the arbitrators and if they reach a wrong conclusion in that regard it is subject to correction by a court. Undoubtedly Section 4 of the Act authorizes a party to a written agreement for arbitration to petition any court of the United States which, save for such agreement, would have jurisdiction under the judicial code, at law, in equity, or in admiralty, of the subject matter of a suit arising out of the controversy between the parties, for relief against any fraudulent or wrongful hindrance to an arbitration proceeding in the manner provided in the written agreement. But we think arbitrators mutually agreed upon could have decided the question of arbitrability of the disputes presented here (Cf., Kanmak Mills,

Inc., v. Society Brand Hat Company and Kentucky River Mills v. Jackson, both supra) and we affirm the judgment solely on the ground that the arbitrator, who made the award sued on, was without power to arbitrate or render award upon the disputes.

Affirmed.