**AMALGAMATED MEAT CUTTERS AND BUTCHER WORKMEN OF NORTH AMERICA, NO. 385, AFL-CIO**

v.

**PENOBSCOT POULTRY COMPANY, Inc.**

Civ. No. 1343.

United States District Court
D. Maine, N. D.

Dec. 6, 1961.

Sidney W. Wernick, Portland, Me., for plaintiff.

Richard W. Glass, Belfast, Me., Gerald E. Rudman, Bangor, Me., for defendant.

GIGNOUX, District Judge.

This action, arising under Section 301 of the Labor Management Relations Act, 1947, 29 U.S.C.A. § 185, was brought by plaintiff union to obtain enforcement of an arbitration award. It is now before the Court upon defendant's motion to dismiss for failure of the complaint to state

a claim upon which relief can be granted. Fed.R.Civ.P. 12(b) (6), 28 U.S.C.A. Defendant contends that the complaint fails to state a claim because the award was made after an *ex parte* hearing and because the matters in dispute were not proper subjects for arbitration under the collective bargaining agreement between the parties. For reasons to be stated, both contentions must be rejected.

The complaint presents the following factual situation: On March 2, 1961 defendant entered into a collective bargaining agreement with plaintiff, as the representative of defendant's employees. The agreement was made effective as of December 2, 1960, and was to run until March 7, 1963 and from year to year thereafter, unless terminated on specified written notice. The agreement contained a "No Strike"-"No Lockout" clause (Article XI) and provided that employee grievances would be handled pursuant to a specified procedure (Article IX). The pertinent provision of the agreement with respect to arbitration reads as follows:

"Article IX; Union Representation Grievance Procedure and Arbitration * * * Section 11

"Should any grievance or dispute arise which cannot be negotiated within the scope of this Article, the Company and the Unions hereby agree to submit said grievance or dispute to arbitration before a third disinterested party. Should the parties fail to choose a third party within the period of ten (10) days, the third shall be designated by the State Board of Conciliation and Arbitration. The decision of the third party shall be final and binding on both parties hereto. Any cost of arbitration hereunder shall be shared equally by both parties hereto."

Between December 2, 1960 and April 9, 1961 certain disputes arose in respect to the interpretation and application of the agreement, which the parties were not able to settle themselves. The matters in dispute were: (1) Whether a large number of employees were retroactively entitled to a wage adjustment of 5¢ per hour provided by the contract for the period from December 2, 1960 to March 2, 1961; (2) Whether the employer was justified in failing to furnish a group of employees with the 40 hours work required by the contract for the week ending April 20, 1961, because of poor road conditions; and (3) Whether the employer was excused from providing 40 hours weekly work for one Annie Choate and others, because they were late or absent during the week.

On April 10, 1961, the president and business representative of the union, Mr. Rodney P. Warren, wrote to Mr. L. Savitz, president of the defendant corporation, demanding that these disputes be submitted to arbitration according to the collective bargaining agreement. Mr. Warren submitted the names of two possible arbitrators and indicated that either would be satisfactory to the union. The defendant did not reply to this letter and allowed a period of ten days to go by without taking any action to designate an arbitrator. On April 21, 1961, after the parties had failed to choose an arbitrator within the ten-day-period specified in the contract, Mr. Warren communicated with the Maine State Board of Conciliation and Arbitration for the purpose of having the Board designate a disinterested person to serve as arbitrator.

The Board designated as arbitrator the Honorable Albert Beliveau, retired Associate Justice of the Supreme Judicial Court of Maine, who assigned the matters in dispute for hearing at the County Building at Belfast, Maine on May 24, 1961. Both plaintiff and defendant were notified of the scheduled hearing. Prior to the hearing, defendant informed the arbitrator that in its opinion the matters in dispute were not subject to arbitration under the contract and therefore it was unwilling at that time to arbitrate the alleged issues. The arbitrator proceeded with the hearing at the time and place assigned. Defendant did not appear and was not represented at the hearing.

On June 3, 1961, the arbitrator announced his decision. He made awards

in favor of plaintiff on the first two issues, and in favor of defendant on the third issue. Since that date defendant has refused to recognize the decision or to comply with it. This suit was commenced by plaintiff to compel defendant to comply with the award.

■ Although defendant has conceded in oral argument that the Court does have jurisdiction over the subject matter,[1] the Court will state briefly the basis of its jurisdiction. Section 301 of the Labor Management Relations Act provides as follows:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

Despite possible indications to the contrary in Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510 (1955), it seems to be settled now that a union action against an employer for enforcement of an arbitration award pursuant to the provisions of a collective bargaining contract, even though the award contemplates only the payment of money due to individual employees, is within the jurisdictional grant of Section 301. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) affirming 269 F.2d 327, 329–330 (4th Cir.1959); Textile Workers Union of America, AFL-CIO, Local Union No. 1386 v. American Thread Co., 291 F.2d 894, 895–896 (4th Cir.1961); American Brake Shoe Co. v. Local 149, UAW, 285 F.2d 869, 874 (4th Cir.1961); Mississippi Valley Electric Co. v. Local 130 of Intern. Broth. of

Elec. Workers, 285 F.2d 229 (5th Cir. 1961), cert. denied, 366 U.S. 918, 81 S.Ct. 1094, 6 L.Ed.2d 241 (1961), reversing on rehearing an earlier opinion to the contrary, Mississippi Valley Electric Co. v. Local 130, of Intern. Broth. of Elec. Workers, 278 F.2d 764 (5th Cir.1960); Oil, Chemical & Atomic Workers International Union, AFL-CIO Local 8–631 v. Delta Refining Co., 277 F.2d 694, 695–696 (6th Cir.1960); Textile Workers Union of America v. Cone Mills Corp., 268 F.2d 920 (4th Cir.1959), cert. denied, 361 U.S. 886, 80 S.Ct. 157, 4 L.Ed.2d 121 (1959); A. L. Kornman Co. v. Amalgamated Clothing Workers, 264 F.2d 733 (6th Cir.1959).

In support of its motion to dismiss for failure to state a claim, defendant's first contention is that the arbitrator's award is unenforceable because it was made after an *ex parte* hearing. The sole authority which defendant presents to sustain this position is the case of Food Handlers Local 425, Amalgamated Meat Cutters, etc. v. Pluss Poultry, Inc., 260 F.2d 835 (8th Cir.1958). However, the arbitration clause in the Pluss case is significantly different from that involved here. It provided for the submission of disputes to a three-man board of arbitrators, consisting of one member to be appointed by each of the parties, and a third member to be chosen by the first two members. If they could not agree, both parties agreed to request the Federal Mediation and Conciliation Service to submit a list of five names, from which the parties should alternately strike off names until one remained. The remaining name was to be the third member of the board. After a union request for arbitration of certain disputes was refused by the company, the union selected an arbitrator, and the company refused to make an appointment. The company also refused to meet with the union to select the third arbitrator from a list furnished by the Federal Mediation and Conciliation Service. Thereafter, the Service appointed a third arbitrator, who

---

1. Defendant's motion as filed also sought dismissal of the action for lack of juris-

diction over the subject matter. Fed.R. Civ.P. 12(b) (1).

held a hearing, which was attended by the union but not by the company. He thereupon issued an award in favor of the union. In an action by the union to enforce that award, the District Court held that the arbitration award was invalid because it was rendered by an arbitrator who was not designated according to the contract, which " * * * discloses no provision which would permit one party to initiate and prosecute to a conclusion an arbitration proceeding without any participation by the other party." Food Handlers Local 425, Amalgamated Meat Cutters, etc. v. Pluss Poultry, Inc., 158 F.Supp. 650, 656 (W.D. Ark.1958). The Court of Appeals affirmed the judgment " * * * solely on the ground that the arbitrator, who made the award sued on, was without power to arbitrate or render award upon the disputes." 260 F.2d at 839.

■ An analysis of the Pluss case makes clear that the parties to that contract never agreed that arbitration could proceed without the presence of an arbitrator representing the company, or without participation by the company in the selection of the third arbitrator, and that the court's decision is based on the ground that by the terms of the contract there involved the single arbitrator had no authority to proceed. In the instant case, on the other hand, the parties expressly contracted to submit their disputes to arbitration before a disinterested third party, and agreed that if they failed to choose a disinterested third party within ten days, the third party should be designated by the State Board of Conciliation and Arbitration, the decision of the arbitrator so designated to be final and binding on both parties. While arbitration under the Pluss contract could not proceed unless the defaulting party took some affirmative step, the contract here involved required no action by the defaulting party in selecting the disinterested third person, nor did it require participation at the hearing by any representative of the defaulting party. The arbitrator who made the award in the present case was designated according to the procedure upon which the parties had agreed in the contract, which permitted the arbitration to proceed without any further action by defendant. Defendant was provided full opportunity to appear before the arbitrator and to be heard. It cannot now complain that it chose to stay away.

■ Defendant argues that when the company refused to join in the arbitration, the only recourse of the union was to seek an injunction ordering the company to comply with the arbitration provision of the collective bargaining agreement, in accordance with the procedure outlined by the Supreme Court of the United States in Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Lincoln Mills authorizes injunctive relief where a court order is necessary in order for the arbitration to proceed. It does not follow, however, that an injunction must be sought in every case where one party refuses to proceed with an arbitration. If, as here, the contract requires no affirmative action by the defaulting party to submit matters to arbitration, there is no occasion to invoke the remedy provided by Lincoln Mills. Such a remedy is necessary only in those cases where one party refuses to participate in the arbitration, and the arbitration may not proceed under the provisions of the contract without a court order.

This conclusion is fully supported by the following cases, dealing with commercial contracts, which have arisen under the United States Arbitration Act, 9 U.S.C. § 1 et seq. Kentucky River Mills v. Jackson, 206 F.2d 111, 47 A.L.R. 2d 1331 (6th Cir.1953), cert. denied, 346 U.S. 887, 74 S.Ct. 144, 98 L.Ed. 392 (1953); Kanmak Mills, Inc. v. Society Brand Hat Co., 236 F.2d 240 (8th Cir. 1956); Standard Magnesium Corp. v. Fuchs, 251 F.2d 455 (10th Cir.1957). In each of these cases the defendant had refused to recognize the validity of an *ex parte* award made by a single arbitrator pursuant to the arbitration provision of its contract, and argued that the only recourse of the party seeking arbitration was to apply under Section 4 of the Arbitration Act for an order directing that

the arbitration proceed.[2] In each case the court held that the terms of Section 4 of the Arbitration Act were permissive and not mandatory, and that it was not necessary for the aggrieved party to initiate court proceedings under Section 4 before proceeding to arbitration in accordance with the terms of its contract. Support for the foregoing conclusion is also found in the case of A/S Ganger Rolf v. Zeeland Transportation, Ltd., 191 F.Supp. 359 (S.D.N.Y.1961), in which relief under Section 4 of the Arbitration Act was denied on the ground that under the terms of the arbitration agreement there involved, arbitration could proceed without action by the defaulting party, and therefore no court order was necessary in order to make the arbitration agreement effective.

■■■ This Court concludes that it was not necessary for plaintiff to seek an injunction before proceeding to arbitration in this case. This result does not deny defendant an adequate remedy. Defendant could have appeared before the arbitrator and raised any defense which it could have asserted in a court proceeding seeking an injunction to compel arbitration. It would have suffered no prejudice by doing so, inasmuch as the question of arbitrability under a contract such as here involved is subject to court review in an action to enforce the arbitrator's award. See infra, p. 883. Furthermore, defendant could have gone to court prior to the arbitration and could have raised the question of arbitrability by a suit to enjoin the arbitration. Weyerhaeuser Co. v. International Brotherhood of Pulp, etc. Workers, 190 F.Supp. 196 (D.C.Me.1960).

■■■ The Court's conclusion is in accord with the spirit and purpose of our national labor laws to promote industrial peace by encouraging the settlement of labor disputes by the parties through the machinery of arbitration under collective bargaining agreements, as a substitute for industrial strife. See United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 566, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 577–582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Neither the company nor the union should be permitted to frustrate this policy by simply asserting the non-arbitrability of disputes, which it contends are not within the arbitration agreement, and requiring the other party to seek an enforcement order from the courts. It is consistent with this policy to place the burden of acting affirmatively upon the party who seeks to avoid arbitration.

There remains the question of whether the arbitration agreement provides for arbitration of the matters here in dispute.

■■■ The three recent labor arbitration decisions of the Supreme Court, decided a year ago, make clear, as both parties in this case agree, that the question of arbitrability under this agreement is one for the court. United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). This is so whether the question of arbitrability arises as a preliminary issue in a suit to compel arbitration or, as here, in a suit to enforce an award already made. Cf. United Steelworkers of America v. Enterprise Wheel & Car

2. Section 4 of the Aribitration Act provides:
   "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any court of the United States which, save for such agreement, would have jurisdiction under the judicial code at law, in equity, or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. * * *" 9 U.S.C. § 4.

Corp., supra, 363 U.S. 597, 80 S.Ct. 1363. These cases also set forth the principles which are to be applied by the court in determining the question of arbitrability under a labor arbitration contract. They declare that a dispute must be held to be arbitrable " * * * unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." United Steelworkers of America v. Warrior & Gulf Navigation Co., supra, 363 U.S. 582–583, 80 S.Ct. 1353; see United Steelworkers of America v. American Manufacturing Co., supra, 363 U.S. 568, 80 S.Ct. 1346. See also Local 201, International Union of Elec., Radio and Mach. Workers, AFL-CIO v. General Electric Co., 262 F.2d 265, 267–268 (1st Cir.1959).

The disputes asserted by the union here were as to whether the company had violated specific provisions of the collective bargaining agreement by refusing to pay retroactively to certain employees a 5¢ wage differential provided by the contract and by refusing to provide to other employees the 40 hours work per week provided by the contract. The arbitration clause in the agreement commits to arbitration *"any* grievance or dispute * * * which cannot be negotiated within the scope of this Article [Article IX]."" (Emphasis added.) Certainly, it cannot be said with any assurance that this arbitration clause is not susceptible of an interpretation that covers the disputes asserted by the union here. To the contrary, it is difficult to conceive of language which on its face would more clearly state the intention of the parties to settle by arbitration all problems arising under the agreement

which they were unable to resolve by direct negotiation.

The only argument which defendant produces for restricting the plain meaning of the broad terminology used in the contract is that the scope of arbitration should be limited to grievances of a disciplinary nature, which were subject to negotiation by means of the specific grievance procedure set forth in Section 5 of Article IX. The Court cannot agree. This argument would necessitate reading the arbitration clause as if the phrase "within the scope of this Article" modified the words "any grievance or dispute", at best an artificial and wholly unnatural construction of the language used. Defendant's contention also ignores completely the comprehensive reach of the "No Strike" clause contained in this agreement.[3] There is no exception in the "No Strike" clause. The three Supreme Court cases which have been previously cited clearly declare that 'where there is no exception in the "No Strike" clause, none should be read into the grievance clause, " * * * since one is the *quid pro quo* for the other."" United Steelworkers of America v. American Manufacturing Co., supra, 363 U.S. 567, 80 S.Ct. 1346; United Steelworkers of America v. Warrior & Gulf Navigation Co., supra, 363 U.S. 583, 80 S.Ct. 1353; see Textile Workers Union of America v. Lincoln Mills, supra, 353 U.S. 455, 77 S.Ct. 917.

In this Court's view, the matters upon which the union requested arbitration here were clearly within the purview of the arbitration clause in this collective bargaining agreement.

Defendant's motion to dismiss is denied.

3. The "No Strike" clause reads as follows: "The Union and its members individually and collectively, agree that during the term of this agreement, or any renewal thereof, they will not participate in any strike. The term 'strike' includes, but is not limited to a sit-down, stay-in, slow-down, walk-out, curtailment of work, stoppage of work, interference with work, sympathy strike, stoppage of any of the company's operations or picketing of the company's plant. Company agrees during the same periods that it will not engage in or cause or maintain a lock-out nor will the Company discriminate against employees because of their Union membership. Nothing in the foregoing shall be construed as preventing the Company from discontinuing its operations either in whole or in part."