HERMANDAD UNIÓN DE EMPLEADOS DEL FONDO DEL SEGURO
DEL ESTADO, peticionaria, *v.* FONDO DEL SEGURO DEL
ESTADO, demandado.

*Número:* MC-81-46 *Resuelto:* 28 de enero de 1982

*José G. Marrero Luna*, abogado de la peticionaria; *Ruperto J. Robles*, abogado del demandado.

PER CURIAM: La Hermandad de Empleados del Fondo del Seguro del Estado ("la Unión") ha recurrido ante este Tribunal para que se pongan en vigor dos laudos de arbitraje. Los laudos se refieren a dos órdenes de querellas. Las querellas 81-3, 81-4 y 81-5 se refieren a los mismos hechos. La 79-1 trata de un asunto distinto. Las discutiremos por separado.

1. *Las querellas 81-3, 81-4 y 81-5.*

El Administrador del Fondo del Seguro del Estado efectuó ciertos traslados. Varios empleados se negaron a aceptarlos hasta tanto se negociaran los traslados con la Unión. El Administrador los suspendió de empleo y sueldo. La Unión procedió entonces a quejarse ante el Comité de Querellas.[1]

La Unión alegó que el Administrador efectuó los traslados en violación a la Sec. 2 del Art. XXXII del convenio colectivo.[2] Tras diversos trámites, el Comité emitió el laudo siguiente en septiembre de 1981:

---

[1] El Art. 6 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 8, ordena que "[t]odo convenio colectivo a otorgarse entre las partes deberá contener una cláusula disponiendo la creación de un Comité de Querellas para la solución de disputas, quejas y agravios. El Comité deberá componerse de igual número de cada parte y será presidido por una persona particular escogida por unanimidad por los miembros del Comité". Siguiendo este mandato, las partes acordaron un convenio colectivo el 7 de julio de 1979, cuya vigencia se extiende hasta junio de 1982 y que en su Art. VIIB crea un Comité de Querellas. Este Comité está compuesto por dos representantes de cada parte y una persona particular que será su presidente. El 23 de abril de 1981 las partes acordaron nombrar al Profesor Reece Bothwell como presidente del Comité.

[2] Dicha sección reza:

"Cuando el Fondo interese trasladar a un empleado con carácter permanente dentro o fuera de su área de trabajo, notificará el traslado al empleado con copia al Presidente de la Hermandad, antes de efectuarse el mismo, y el empleado y la Hermandad tendrán diez (10) días laborables a partir de la notificación para

Por la presente se ordena al Fondo del Seguro del Estado a iniciar las negociaciones con la Hermandad-Unión de Empleados del Fondo del Seguro del Estado. Mientras tanto, el Fondo deberá respetar el derecho de los empleados· a permanecer en su sitio habitual de trabajo según lo autoriza en el Artículo XXXII, Sección 2 del Convenio Colectivo. El Fondo deberá pagar de inmediato y sin excusa o dilación alguna, los salarios de los empleados que les han sido retenidos impropiamente. El Fondo deberá además, de abstenerse de amenazar y coaxionar [*sic*] a los empleados del Fondo por el hecho de que éstos reclamen que se cumpla con lo dispuesto en el Convenio consultando a la Unión. Este Comité está plenamente consciente de que no tiene autoridad para inmiscuirse en la administración interna del Fondo ni la Unión, excepto en los casos y en la forma que provee el Convenio Colectivo. Y es precisamente lo que hemos hecho con gran escrupulosidad.

El Fondo se negó a obedecer la orden del Comité. Dictamos orden para que el Fondo mostrase causa por la cual no debe ordenarse por este Tribunal el cumplimiento del laudo.

El Fondo hace varios planteamientos en su comparecencia. En primer término señala que las querellas 81-3, 81-4 y 81-5 carecen de arbitrabilidad procesal debido a que la Unión no esperó, antes de acudir al Comité, a que la querella pasase por la etapa administrativa a que se refieren los Arts.· VII y XXXII del convenio.[3]

■ La norma general establecida es que debe cumplirse estrictamente el procedimiento acordado en un convenio para el procesamiento de quejas y agravios y para su decisión o arbitraje. *San Juan Mercantile Corp.* v. *J.R.T.*, 104 D.P.R. 86, 90 (1975); *Buena Vista Dairy, Inc.* v. *J.R.T.*, 94 D.P.R. 624, 631 (1967). Véanse, además: *Pérez* v. *Auto-*

discutir el caso directamente con el Director de Relaciones Industriales o el Administrador. Transcurrido dicho término sin que se resuelva el asunto, se seguirá el procedimiento ante el Comité de Querellas y el empleado permanecerá en su sitio de trabajo, hasta tanto el Comité rinda su laudo. . . ."

[3] En el escolio 2 de esta sentencia se describe fundamentalmente la fase administrativa omitida.

54

*ridad Fuentes Fluviales*, 87 D.P.R. 118, 124 (1963); *J.R.T.* v. *A.C.A.A.*, 107 D.P.R. 84, 90–91 (1978); *Nazario* v. *Lámparas Quesadas Sales Corp.*, 99 D.P.R. 450, 455 (1970); *Sria. del Trabajo* v. *Hull Dobbs*, 101 D.P.R. 286, 289 (1973); *Rivera* v. *Coop. Ganaderos de Vieques*, 110 D.P.R. 621 (1981).

■ Tal procedimiento no tiene que agotarse, sin embargo, cuando su observancia rigurosa representa un acto fútil, un gesto vacío, un paso irreal o imposible. F. y E. A. Elkouri, *How Arbitration Works*, 3ra ed., The Bureau of National Affairs, Inc., Washington, 1973, págs. 161–162; Anno. *What Circumstances Justify Employee's Failure to Exhaust Remedies Provided in Collective Bargaining Agreement Before Bringing Grievance Suit Against Employer in Federal Court, Under § 301 of the Labor Management Relations Act of 1947 (29 USCS § 185)*, 52 A.L.R. Fed. 591, 623 y ss.; *Barbet Mills, Inc.*, 16 L.A. 563 (1951); *In re Roto Supply Sales Co.*, 28 L.A. 657 (1957); *In re Greenstone*, 29 L.A. 161 (1957); *General Tire Co.* v. *Rubber Workers*, 49 L.R.R.M. 2001 (1961).

■ En el caso de autos el Fondo se negó a negociar. El Administrador del Fondo hasta despidió a los obreros que no aceptaron sus traslados e insistieron en la negociación. Como sucedió en *Barbet Mills*, supra, acudir al patrono para solicitar la negociación del agravio cuando éste no había dejado lugar a dudas respecto a su posición sobre el problema hubiese sido un acto inútil. Pero sucede algo más en este caso. La dilación resultante hubiese facilitado el logro por el Fondo de un objetivo que persiguió tenazmente a través de todo el proceso. El Fondo acusó de parcialidad repetidas veces al presidente del Comité de Querellas, profesor Reece B. Bothwell, libremente escogido por las partes. Solicitó sin éxito su inhibición. Requirió y obtuvo varias posposiciones de la vista. Hubo que suspender los procedimientos en varias ocasiones por incomparecencia de los abogados del Fondo. Se intentó, a todas

luces, alargar el proceso hasta que venciese el contrato del profesor Bothwell. La doctrina sobre la observancia del procedimiento de quejas y agravios no se estructuró para fomentar su empleo inútil o su manipulación.

Los otros señalamientos del Fondo son igualmente inmeritorios. El Fondo apunta que lo que se pretende dilucidar ante el Comité es la composición de la unidad contratante, asunto sobre el cual posee jurisdicción exclusiva la Junta de Relaciones del Trabajo. *F.S.E.* v. *J.R.T.*, 111 D.P.R. 505 (1981). No es correcta esta apreciación. Las querellas planteadas ante el Comité por la Unión van encaminadas a obligar al Fondo a negociar los traslados, según lo requiere el convenio. Esta gestión no afecta la composición de la unidad apropiada.

Carecen de fundamento también las imputaciones del Fondo de que el profesor Bothwell incurrió en conducta impropia. Hemos examinado los autos con detenimiento y no hemos hallado prueba alguna de que el señor Bothwell no haya actuado con entera corrección y rectitud en la controversia que nos ocupa.

El Fondo alega, además, que se violó el debido procedimiento de ley al consolidar las querellas 81-3, 81-4 y 81-5. El Fondo no demuestra cómo la consolidación le ha afectado adversamente. Por el contrario se desprende de autos que, por basarse en los mismos hechos, lo lógico y conveniente era consolidar las tres querellas.

Señala el Fondo, por último, que se infringió el debido proceso de ley al celebrarse la vista sin la presencia del abogado y los representantes del Fondo. El récord demuestra que, ante la actitud contumaz del Fondo en su esfuerzo para dilatar la vista para que ésta se ventilase ante un Comité de Querellas no presidido por el señor Bothwell, la celebración de la vista estuvo plenamente justificada. Hemos expresado que la violación del debido procedimiento de ley es una de las causas de nulidad de un laudo de arbitraje. *J.R.T.* v. *Securitas, Inc.*, 111 D.P.R. 580

(1981); *J.R.T.* v. *Aut. de Comunicaciones*, 110 D.P.R. 879 (1981). Pero no puede permitirse que la implementación de un procedimiento de arbitraje, previamente pactado, dependa de los deseos de una de las partes de comparecer al mismo. *In re Velvet Textile Corp.*, 7 L.A. 685, 691 (1947); McDermott, *Arbitrability: the Courts Versus the Arbitrator*, 23 Arb. J. 18, 34–35 (1968); Elkouri y Elkouri, *op. cit.*, págs. 203–204. El Fondo fue debidamente notificado. Su incomparecencia fue parte de un esquema dirigido a obstaculizar la función del Comité de Querellas. Ante tan obstinada e irrazonable postura del Fondo se justificaba celebrar la vista sin su presencia. *Musicians, Local 336* v. *Bonatz*, 90 L.R.R.M. 2956, 2958 (1974); *Local 149, Boot and Shoe Workers Union* v. *Faith Shoe Co.*, 201 F.Supp. 234, 236 (1962); *Amalgamated Meat Cutters, Etc.* v. *Penobscot Poultry Co.*, 200 F.Supp. 879, 882 (1961); *In re Sunshine Convalescent Hospital and Service and Hospital Employees Union, Local 399*, 62 L.A. 276, 277–278 (1974); *In re American Totalisator Company Inc. and International Brotherhood of Electrical Workers, Local 1501*, 74 L.A. 377, 380 (1980).

2. *La querella 79-1.*

El 18 de septiembre de 1981 el Comité de Querellas emitió el siguiente laudo:

Dada la evidencia aquí presentada y considerada por este Comité de Querellas, éste acuerda que el Fondo del Seguro del Estado debe pagar al Sr. Climent Sanz a razón de tiempo y medio las horas extras trabajadas para el Fondo, que suman, según los propios expedientes del Fondo, un total de 681.9 horas.

El Fondo del Seguro del Estado deberá pagar al Sr. Climent Sanz, además, una suma igual a la suma correspondiente a las horas extras acumuladas por concepto de indemnización, conforme a lo que provee la Ley Núm. 379 del 11 [*sic*] de mayo de 1948, según ha sido enmendada y aplicada en el caso de Pérez vs. Autoridad de Fuentes Fluviales, (87 D.P.R. 118) del 25 de enero de 1963.

La razón a que acude el Fondo para intentar justificar su negativa a cumplir este laudo es que se le privó del debido proceso de ley al celebrarse la vista de esta querella sin su presencia. Los autos muestran que medió, por parte del Fondo, en el trámite de esta querella la misma actitud de contumacia y desafío que permeó las otras querellas aquí discutidas. Por los motivos expuestos al final de la primera sección de esta sentencia es improcedente, en consecuencia, el argumento del Fondo.

*Se expedirá al auto y se ordenará al Administrador del Fondo del Seguro del Estado a cumplir los laudos emitidos en torno a las querellas 81-3, 81-4, 81-5 y 79-1.*

El Juez Asociado Señor Negrón García no intervino.

