INTERNATIONAL UNION OF OPERAT-
ING ENGINEERS (AFL–CIO), LO-
CAL NO. 381, Plaintiff,

v.

MONSANTO CHEMICAL COMPANY,
Defendant.

Civ. A. No. 824.

United States District Court
W. D. Arkansas,
El Dorado Division.

Aug. 19, 1958.

Shackleford & Shackleford, El Dorado,. Ark., for plaintiff.

Jeff Davis, El Dorado, Ark., for de-- fendant.

JOHN E. MILLER, District Judge.

On July 16, 1958, the plaintiff served. and filed its motion for summary judg-- ment in which it alleged that the plead- ings, admissions on file, together with; the affidavits attached to the motion,. "show that there is no genuine issue as. to any material facts and that this plain- tiff is entitled to a judgment as a mat-- ter of law."

On August 8, 1958, the defendant served and filed its motion for summary judgment in which it alleged:

"The complaint of the plaintiff, the answer of the defendant to that complaint, the reply of the plaintiff to the defendant's answer, the request for admissions herein filed by plaintiff, the defendant's response thereto, the affidavits in support of plaintiff's motion for summary judgment, and the affidavits filed by the defendant in support of its motion for summary judgment, which affidavits are attached hereto, show that there is no genuine issue as to any material fact, and that the defendant, Monsanto Chemical Company, is entitled to a judgment as a matter of law."

The parties have served and filed written briefs and arguments in support of their respective motions, and the court has considered the briefs of the parties along with the entire record, and the motions are now ready for disposition.

The plaintiff is a labor union affiliated with AFL-CIO, and is the bargaining agent for certain of the employees of the defendant at its refinery at El Dorado, Arkansas. The defendant is a foreign corporation engaged in business in the State of Arkansas in the City of El Dorado within the Western District of Arkansas.

Article I of the contract between plaintiff and defendant reads as follows:

"The Company hereby recognizes the Union as exclusive representative of all employees in the following described bargaining unit, to-wit:

"All employees of Monsanto Chemical Company (Lion Oil Company Division) in its El Dorado refinery except chemists, supervisors, foremen, armed guards, office and engineering personnel, and telephone operators, for the purpose of collective bargaining with the Company with respect to wages, hours, and other conditions of employment."

Section 1 of Article VII of the Agreement provides:

"Section 1. Routine Submission.

"Any grievance or dispute arising out of the application of this agreement shall be governed in their manner of settlement by the terms of the agreement, according to the following procedure:

"(a) The individual employee, a group of employees, a steward, or the Union shall make a complaint orally to the immediate foreman of the department in which the grievance occurred. Only the immediate foreman shall discuss the grievance with an individual employee or a group of employees as a representative of the Company.

"(b) If the grievance is not satisfactorily adjusted by the Foreman's answer, it shall be referred to the Workmen's Committee. If the Workmen's Committee feels that the grievance has merit, the matter shall be reduced to writing, in duplicate signed by the employee involved, and the Committee will submit it to the Department Head of the employee.

"The Department Head shall advise the Workmen's Committee in writing within five (5) days, Saturdays, Sundays and holidays excluded, of his decision in regard to the complaint.

"(c) If the grievance is not satisfactorily adjusted, the Workmen's Committee shall, within ten (10) days, Saturdays, Sundays, and holidays excluded following the receipt of the Department Head's decision, submit the matter in writing to the Plant Manager who shall render his decision as to the matter in writing within ten (10) days, Saturdays, Sundays, and holidays excluded, of receipt of the grievance."

Section 2 of said Article provides that if the grievance is not adjusted satisfactorily through the procedure set forth in Section I of Article VII, the matter may be referred to an arbitration board consisting of three members. The section then sets forth the manner of the selection of the arbitrators and the procedure to be followed in the consideration by the board of arbitrators of the grievance.

J. W. Prince was an employee of defendant as a first-class rigger in the Mechanical Department. His immediate foreman was Frank Thurlkill.

On March 13, 1958, Maynard White, Acting President and Chairman of the Workmen's Committee of the plaintiff, made a complaint orally to the said Foreman to the effect that the employee had been unjustly discharged on March 11, 1958. The Foreman denied the grievance, and the same was referred to the Workmen's Committee of the plaintiff, and the grievance was reduced to writing in duplicate, signed by J. W. Prince, and was submitted to K. H. Burns, the defendant's Department Head.

On March 19, 1958, the answer of the said K. H. Burns to the grievance of the employee was delivered to the Workmen's Committee appointed by the plaintiff and acting for it under the provisions of Article VII of the contract. The answer of Burns, the defendant's Department Head, was: "Mr. Prince was discharged for refusing to follow instructions given by his Foreman."

On March 24, 1958, the plaintiff Union, by V. E. Henry, Recording Corresponding Secretary, wrote W. M. Carney, Plant Manager of defendant. The copy of the letter in the court file does not reflect that it was written under the letterhead of plaintiff. He advised Mr. Carney that the Foreman's answer was not satisfactory on the grievance filed by J. W. Prince, and "we now appeal to you for your decision on this matter and request a Committee meeting with you to discuss this Grievance on the earliest date possible at your convenience."

On April 1, 1958, Carney delivered to the plaintiff his reply to the letter of the Recording Corresponding Secretary of March 24, in which Mr. Carney said:

"Our records indicate that the grievance of Mr. Prince was submitted to K. H. Burns, the head of the department in which Mr. Prince was working at the time of his discharge, by the Workmen's Committee, and the answer of Burns to the grievance was given on March 19, 1958.

"The purported submission of this grievance to me by your union is not in accordance with the provisions of the contract between Monsanto Chemical Company and your union as the representative of the men represented by your union, of which Mr. Prince is one. For that reason I am not called upon to pass upon this grievance.

"If, however, it is my obligation as Plant Manager to pass upon this grievance, you are informed that I deny it; since Mr. Prince was discharged for failing to perform work as instructed by his foreman and his failure to obey further instructions of his foreman. Therefore, his discharge was proper, was not in conflict with the provisions of the contract mentioned, and his grievance is without merit."

On April 2, 1958, the plaintiff Union, by Maynard White, Acting President and Chairman of the Workmen's Committee, wrote Mr. Carney, Plant Manager, a letter which was mailed in the Post Office at El Dorado, Ark., on the same date, April 2, 1958, as registered mail. The next morning, April 3, the letter was delivered to an employee of defendant at its mail room at its principal office in El Dorado, and was transmitted thereafter to W. M. Carney, Plant Manager at the defendant's refinery. The copy of the letter in the record does not reflect that it was written under the letterhead of the plaintiff, and the letter is an exact duplicate of the letter of March 24, which was written

to Carney by V. E. Henry, Recording Corresponding Secretary, except that the letter of April 2 is signed "Local Union No. 381, IUOE, Maynard White, Acting President, Chairman of Workmen's Committee."

On April 7, 1958, Carney forwarded a letter addressed to Messrs. Maynard White, John Cottrell, W. A. Stark, and W. M. Vineyard, as the Workmen's Committee created and functioning under the provisions of Article VIII of the agreement. In that letter Mr. Carney stated:

"Under date of March 24, 1958, Local Union No. 381, IUOE, addressed to me, as plant manager of the refinery of Monsanto Chemical Company which I manage, a letter purporting to submit to me for decision the grievance of Mr. J. W. Prince.

"Under date of April 1, 1958, I addressed a letter to your Union stating the reasons for my not being called upon to pass upon that grievance.

"Under date of April 2, 1958, Local Union No. 381, IUOE addressed to me a letter as plant manager of the plant heretofore mentioned, purporting again to submit to me for determination the grievance of Mr. J. W. Prince, which is the same grievance as that mentioned in the letter from your Union dated March 24, 1958.

"The letter last mentioned was mailed in the Post Office at El Dorado, Arkansas, on April 2, 1958, to be delivered to me by registered mail. That letter was delivered by foot carrier to the mail clerk in the office of Lion Oil Company Division of Monsanto Chemical Company at El Dorado, Arkansas, on the morning of April 3, 1958, and was transferred from that office to me at the refinery on the same date.

"From the facts stated, you will observe that that grievance was submitted to me through the medium of the letter last mentioned more than fourteen days after March 19, 1958, the date upon which K. H. Burns, the head of the department in which Mr. Prince was working at the time of his discharge, delivered to your Committee his answer to this grievance, which answer denied it.

"Consequently, if the letter of April 2, 1958, was in proper form otherwise to submit this grievance to me for my decision, it submitted that grievance to me too late to comply with the provisions of sub-section C of Article VII of the contract hereinbefore mentioned.

"It is my judgment, therefore, that I am not called upon to pass upon this grievance. However, if I am called upon to pass upon it, I deny it, since Mr. Prince was discharged for failing to perform work as instructed by his foreman and his failure to obey further instructions of his foreman. He was, therefore, properly discharged, his discharge was not in conflict with the provisions of the contract hereinbefore mentioned, and his grievance is without merit."

On April 14, 1958, the said Maynard White, Acting Chairman and President of the Workmen's Committee, renewed the complaint orally to Frank Thurlkill, the immediate foreman of the discharged employee, and on the same date delivered the grievance report to Department Head K. H. Burns, to which Burns replied:

"I, K. H. Burns, Department Head of the Mechanical Department, deny the foregoing grievance of J. W. Prince because he has previously filed a grievance involving his discharge, which grievance was abandoned since it was not presented to the Plant Manager for his consideration within the time provided in the contract. I also deny this grievance because Prince was discharged for failing to do work which he was instructed to do by his foreman and for failing to obey further instructions of his foreman."

On April 24, 1958, the Workmen's Committee of plaintiff wrote the defendant, attention Plant Manager. The copy of the letter in the file does not reflect that it was written under the letterhead of plaintiff, but the letter states that the grievance is similar to the one submitted March 13, and "Due to the alleged technicalities as raised by your letter dated April 1st and April 7th, 1958, in processing my grievance, and in order to prevent undue delay and expedite final decision, this grievance is resubmitted." The Workmen's Committee asked the Plant Manager to decide the matter and requested a Committee meeting to discuss the grievance at the earliest date possible.

On May 7, 1958, the Plant Manager, Carney, replied to the Workmen's Committee as follows:

"This is in reply to your letter dated April 24, 1958, submitting to me the grievance filed by J. W. Prince and dated April 8, 1958.

"The aforementioned grievance of J. W. Prince is denied because he has previously filed a grievance involving his discharge, which grievance was abandoned as a result of it not having been presented by the Workmen's Committee to me within the time provided in the contract.

"I also deny this grievance because Mr. Prince was discharged for failing to do work which he was instructed to do by his foreman, and for failing to obey further instructions of his foreman."

On May 13, 1958, a letter signed by V. E. Henry, Recording Corresponding Secretary of plaintiff, was written to the Plant Manager advising that the employee, J. W. Prince, desired to take the grievance to arbitration, and in the letter advised the Plant Manager of the selection of a person as a representative of the Union on the Arbitration Board.

On May 16, 1958, the defendant, by W. M. Carney, Plant Manager, replied to the request for arbitration by letter, as follows:

"We acknowledge the receipt of your letter of May 13, 1958, relative to grievances made by J. W. Prince, a former employee of our Company at the refinery in El Dorado, Arkansas, in the bargaining unit represented by your Union.

"We are of the opinion that our Company is not obligated, under the terms of the collective bargaining agreement between our Company and your Union which was in effect at the time Mr. Prince was discharged, to arbitrate either of the grievances made by Mr. Prince with respect to his discharge.

"As stated in the reply of the Plant Manager of the refinery with respect to the first grievance made by Mr. Prince, that grievance was not submitted to the Plant Manager within the time allowed by the provisions of the contract.

"It is our opinion that the second grievance made by Mr. Prince is not a proper subject for arbitration under the terms of our collective bargaining contract with your Union since it is based upon the same alleged wrong as that stated in the first grievance made by him.

"If your Union disagrees with our conclusion that our Company is not obligated by the terms of the contract to arbitrate either of the grievances of Mr. Prince, we feel that the proper forum for the decision of that point is in the United States District Court. Under the contract involved, our Company has not agreed to submit to arbitration the question as to the arbitrability of a grievance."

The correspondence between the parties, beginning March 13, 1958, and concluding on May 16, 1958, indicates that there is some discrepancy concerning the date the employee, J. W. Prince, submitted his second grievance. Exhibit F to the request for admissions shows the second grievance to have been dated April 8, 1958, but according to plaintiff's requests for admissions 11 and 12 and the

defendant's response thereto, the second grievance was actually submitted April 14 and denied by K. H. Burns, Department Head, on April 18. Six days later on April 24 the second grievance was submitted by the Workmen's Committee to W. M. Carney, Plant Manager. However, the re-submission of the grievance does not appear to be material in the view the court takes of the proceedings that were had under the first submission.

■ The court has jurisdiction of this cause under Sec. 301, Labor Management Relations Act, 29 U.S.C.A. Sec. 185(a). See, also, Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed. 2d 972.

It is the contention of the defendant that the record shows that the grievance with respect to the discharge of the employee was not processed under the grievance procedure provided in the contract and, as a result thereof, the defendant is not obligated to submit to arbitration the question as to whether the employee was lawfully discharged. The contrary position is taken by the plaintiff, and it seeks a decree ordering the defendant to join with it in submitting the dispute to arbitration as provided in Section 2 of Article VII of the contract.

In Food Handlers Local 425, Amalgamated Meat Cutters and Butcher Workmen of North America, AFL-CIO, v. Pluss Poultry, Inc., D.C.W.D.Ark., 158 F.Supp. 650, at page 657, the court said:

"In determining whether specific performance should be required, the Court would necessarily have to determine whether the issues were arbitrable under the terms of the contract. The procedure followed by plaintiff in the instant case in obtaining the arbitration is not in accord with the provisions of the arbitration agreement, and the award made by the arbitrator is invalid."

Article I of the agreement provides that it is applicable to all employees of the defendant (with certain exceptions not here material) "for the purpose of collective bargaining with the Company with respect to wages, hours, and other conditions of employment." This provision in the contract is broad enough to cover the substantive question as to whether the employee, Prince, was illegally discharged, but Section 1 of Article VII of the contract specifically outlines the procedure to be followed before a grievance may be submitted to arbitration, and the defendant contends that the grievance with respect to the discharge of the employee was at no time processed in accordance with the provisions of the contract in effect at the time of his discharge. On the other hand, the plaintiff contends that the question of whether the grievance was properly submitted is a procedural matter which should be arbitrated at the same time the substantive issue of discharge is arbitrated.

■■ The parties had the right to determine the scope of the arbitration provision, and thus the determination of whether a particular dispute is arbitrable is a problem of a contract interpretation. The contract may either expressly or by broadly stating its scope include disputed interpretations of any contract term and may refer the very question of arbitrability to the arbitrator for decision. If under the terms of the contract a procedural question is arbitrable, then the question of arbitrability would go to the Board of Arbitration for its decision just as a court has jurisdiction to determine its own jurisdiction. But absent a provision in the contract referring a procedural question of arbitrability to the Board of Arbitrators, the procedural question is not arbitrable and the employee or his representatives must comply with the procedural requirements before the machinery of arbitration can be set in operation. See, Food Handler Local 425, Amalgamated Meat Cutters and Butcher Workmen of America, AFL-CIO, v. Pluss Poultry, Inc., supra, and cases therein cited and quoted from.

■ As heretofore stated the substantive rights of the discharged employee are a proper subject of arbitration under the terms of the contract, but the court

must determine as a preliminary matter that the defendant has contracted to refer the issue to arbitration and has broken that promise. See, Local No. 149 of the American Federation of Technical Engineers, AFL, v. General Electric Co., 1 Cir., 250 F.2d 922, 927. Thus before the plaintiff has the right to a decree of the court ordering specific performance of the contract to arbitrate, it must convince the court that the employer, defendant herein, has violated its promise to arbitrate. If the grievance was properly submitted in accordance with the provisions of Section 1 of Article VII, the plaintiff is entitled to a decree for specific performance.

Section 7 of Article XIII of the contract provides:

"There shall be no strike, lockout, or concerted slowdown during the entire term of this agreement."

It is the duty of the court in construing a contract to bear in mind the ends sought to be attained by a fair interpretation of the contract.

The defendant admits that on March 13 Maynard White, Acting President and Chairman of the Workmen's Committee of the plaintiff, made a complaint orally to Frank Thurlkill, the immediate foreman of the department of defendant in which the grievance occurred, in accordance with Section 1(a) of Article VII. It is also admitted that the grievance was not satisfactorily adjusted by the foreman's answer, and it was referred to the Workmen's Committee. Evidently the Workmen's Committee felt that the grievance was meritorious as it was reduced to writing, signed by the employee, Prince, and submitted to K. H. Burns, Department Head of the department in which the employee was employed at the time of his discharge. On March 19, within five days from such submission, Mr. Burns, the Department Head, advised the plaintiff's Workmen's Committee in writing that the employee was discharged for refusing to follow instructions given by his foreman.

Thus, it seems that the procedural requirements of Sections 1(a) and (b) of Article VII were complied with by the plaintiff.

Subsection (c) of Section 1 of Article VII of the contract provides:

"If the grievance is not satisfactorily adjusted, the Workmen's Committee shall, within ten (10) days, Saturdays, Sundays, and holidays excluded, following the receipt of the Department Head's decision, submit the matter in writing to the Plant Manager who shall render his decision as to the matter in writing within ten (10) days, Saturdays, Sundays, and holidays excluded, of receipt of the grievance."

On March 24, 1958, less than ten days after the receipt of the reply of K. H. Burns, Head of the Department, denying the grievance of the employee, a letter was addressed to W. M. Carney, Plant Manager, on behalf of the plaintiff by V. E. Henry, Recording Corresponding Secretary, in which the Plant Manager was requested to meet with the Committee to discuss the grievance at the earliest date possible at his convenience and for his decision on the grievance. Within the time permitted for a decision by the Plant Manager, he wrote a letter addressed to the plaintiff, attention Mr. V. E. Henry, Secretary, in which he stated that he was not called upon to pass upon the grievance because it was not submitted in accordance with the provisions of the contract. The Plant Manager, Mr. Carney, evidently had reference to the fact that the matter was submitted by the Recording Corresponding Secretary and not by the individual members of the Workmen's Committee.

The affidavit of V. E. Henry, attached to the plaintiff's motion for summary judgment, states that he, acting in the capacity of Recording Corresponding Secretary of the Union, was directed by Maynard White in his capacity as Chairman of the Workmen's Committee to write the letter of March 24 to W. M. Carney, Plant Manager, and submit the grievance to him for his decision. The affidavit further discloses that the procedure of being directed by the Chair-

man of the Workmen's Committee in his official capacity as Recording Corresponding Secretary has always been the procedure followed in writing the Plant Manager and submitting a grievance for his decision, and that "heretofore this procedure was never questioned, denied or objected to by said company, but to the contrary on every occasion in the past, being 21 times in number, was accepted as the proper procedure." To the same effect is the affidavit of Maynard White.

Following the receipt of the letter from the Plant Manager to the effect that the grievance had not been properly submitted to him, Maynard White, Acting President and Chairman of the Workmen's Committee, wrote the Plant Manager and appealed to him for his decision on the matter and requested a Committee meeting to discuss the grievance. In other words, the same request was made in the letter of April 2, signed by Maynard White, Chairman of the Workmen's Committee, as was contained in the letter of March 24 written by V. E. Henry, Recording Corresponding Secretary. The letter dated April 2 was registered and was deposited in the Post Office on the same date. It was delivered to the defendant's office the next morning, April 3, and the young lady who signed the registry receipt states that the letter was forwarded by messenger to the Plant Manager at his office at the refinery of defendant on the same date.

Article XVIII of the contract provides:

"Any notice to the Company provided herein may be given by depositing the same in the U. S. mail in a sealed envelope, registered, postage prepaid, and addressed to Monsanto Chemical Company (Lion Oil Company Division), El Dorado Refinery, El Dorado, Arkansas, Attention: Plant Manager, and any notice to be given to the Union may be given by depositing the same in the U. S. mail in a sealed envelope, registered, postage prepaid, and addressed to 'International Union of Operating Engineers (AFL-CIO) Local No. 381, El Dorado, Arkansas, Attention: Recording Secretary.' "

It may be admitted that the letter of April 2 was not addressed as required by Article XVIII of the contract, but in the opinion of the court the letter of March 24 was a sufficient compliance with Subsection (c) of Section 1 of Article VII. The defendant admits that the letter was forwarded to W. M. Carney, the Plant Manager, but the defendant denies that the letter was effective to submit the matter therein mentioned to the Plant Manager.

The defendant at no time was misled as to the nature of the grievance. The officials of the defendant were fully advised at all times exactly what the grievance was, and Mr. Carney, the Plant Manager, in his letter in answer to the letter of the Recording Corresponding Secretary stated that he was not called upon to pass upon the grievance because of the failure on the part of the Union to comply with the provisions of the contract. He did not specify wherein the Union had failed, but it appears that he had in mind that the appeal to the Plant Manager had to be made by the individual members of the Workmen's Committee. However, in the same letter Mr. Carney stated:

"If, however, it is my obligation as Plant Manager to pass upon this grievance, you are informed that I deny it; since Mr. Prince was discharged for failing to perform work as instructed by his foreman and his failure to obey further instructions of his foreman. Therefore, his discharge was proper, was not in conflict with the provisions of the contract mentioned, and his grievance is without merit."

The same statement was made by Mr. Carney in his letter of April 7 addressed to the members of the Workmen's Committee in response to the appeal to him under date of April 2 by Maynard White, Acting President of the Union and Chairman of the Workmen's Committee.

■ In view of what occurred it is difficult to understand how any right of the defendant was jeopardized, even though the Workmen's Committee of the plaintiff may not have literally complied with the procedural requirements of Article VII of the contract. To hold that there was not a substantial compliance with the procedural requirements of Article VII would be to disregard substance and fair dealing in favor of full compliance of all technical requirements.

■ The plaintiff contends that the defendant is estopped from pleading a failure to literally comply with the technical requirements of the procedural section of the contract because of its conduct and its acceptance in at least 21 other instances of the procedure that was followed in the instant case. The defendant's answer is that it is not estopped because it notified the officials of the plaintiff that it would require strict and technical compliance of the procedural requirements for the presentation of the grievance. Yet at the same time the officials of defendant denied the grievance and did not by the terms of their own letters stand upon their statement that they were not required to pass upon the validity or the merit of the grievance. Under the facts the court is of the opinion that it is not necessary to pass upon the question of estoppel, and neither is it necessary to consider the effort of the defendant to resubmit the grievance. The court is of the opinion that there has been a sufficient compliance with the procedural requirements; that there is no genuine issue as to any material fact and that the plaintiff is entitled to a judgment as a matter of law; and the motion of defendant for summary judgment should be denied.

A decree in accordance herewith is being entered today granting the motion of the plaintiff and denying the motion of defendant, and ordering the defendant to proceed under Section 2 of Article VII to arbitrate the grievance of the discharged employee, J. W. Prince.